**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CLIFTON STATON, | : | Civil No. 02-1833 (GEB) |
| Petitioner, | : | |
| v. | : | **O P I N I O N** |
| ROY L. HENDRICKS, Administrator, New Jersey State Prison, et al. | : | |
| Respondents. | : | |

**APPEARANCES:**

> Clifton Staton, <u>Pro</u> <u>Se</u>
> #259755
> New Jersey State Prison
> P.O. Box 861
> Trenton, NJ 08625

> James M. Scott, III
> Asst. Prosecutor
> Mercer County Court House
> P.O. Box 8068
> Trenton, NJ 08650
> Attorney for Respondents

**BROWN, JR.,** District Judge

Petitioner, Clifton Staton, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the petition will be denied.

## BACKGROUND

A.   Factual Background[1]

On April 28, 1992, two individuals were standing on a corner in Trenton, New Jersey when they were approached and robbed by three individuals.  The three robbers were carrying weapons, and demanded that the men throw their money and jewelry on the ground.  The victims did so, and then began to run away.  One of the robbers picked up the money and jewelry from the ground and then one or more of the robbers shot at the victims as they ran from the scene to a nearby restaurant.  Petitioner was the driver of the "get-a-way" car.

Trenton police officers testified that while investigating another incident near the area of the robbery, they heard gunshots and alerted the dispatcher.  They found and spoke with the victims of the crime and learned that they were robbed by three black men, and that a red vehicle with four black males had been suspiciously circling the area prior to the robbery. Officers found the described vehicle, which was discovered to be stolen, with the four passengers and attempted to pull it over, but the vehicle took off and a high speed chase ensued.  After

---

[1]  This factual background, which is not all-inclusive, is taken from Petitioner's brief in support of his habeas petition, as well as the decision of the Superior Court of New Jersey, Appellate Division, affirming Petitioner's conviction and sentence.  See State v. Staton, A-4792-93T4 (Nov. 18, 1996) (Respondents' Exhibit 13).

2

the car they were chasing crashed into a tree, officers were able to arrest the occupants of the vehicle, including Petitioner. Weapons were found in the vehicle.

Petitioner claims that he played no role in the robbery. He states that one of the robbers, Patrick, was his daughter's boyfriend. Petitioner claims that Patrick asked him to drive him to Newark, but he refused and instead drove Patrick and his friends to a gas station. Petitioner states that he did not know that the car he was driving was stolen, since it was idling and dark when he took the wheel. He claims that on the way to the gas station, he was pulled over by police, and that the occupants of the car told him to "take off" because the car was stolen. Petitioner states that he panicked and drove away because he was afraid of the occupants of the car and afraid of the police. He then crashed the car into a nearby tree and was apprehended by police. He states he was dazed upon impact, did not resist arrest, and was the only occupant of the car without a weapon.

However, Patrick, the robber who was involved with Petitioner's daughter, accepted a guilty plea and testified as a State witness at Petitioner's trial. He testified that it was Petitioner's idea to commit robberies so that Patrick could financially support Petitioner's daughter, who was pregnant with Patrick's child. Patrick testified Petitioner was involved in

3

organizing and planning the robberies, knew that the car he was driving was stolen, and remained in the car during the robberies.

Petitioner presented a witness at trial who testified that Patrick's testimony was motivated by self-interest and that Patrick had said that he "did what he had to do" in order to get a reduced sentence.

B.   Procedural History

On October 20, 1992, a Mercer County Grand Jury indicted Petitioner for acting as an accomplice with the three robbers in the April 28, 1992 crime.  The indictment alleged 14 counts, including two counts of first degree armed robbery, contrary to N.J.S.A. 2C:15-1; two counts of aggravated assault, contrary to N.J.S.A. 2C:12-1b(4); two counts of theft, contrary to N.J.S.A. 2C:20-3a; two counts of possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(a); one count of second degree aggravated assault, contrary to N.J.S.A. 2C:12-1b(1); possession of a sawed-off shotgun, contrary to N.J.S.A. 2C:39-3b; possession of hollow-nosed bullets, contrary to N.J.S.A. 2C:39-3f; possession of an unlicensed shotgun and two unlicensed handguns, contrary to N.J.S.A. 2C:39-5c(1) and 2C:39-5b; and theft by receipt of a stolen motor vehicle, contrary to N.J.S.A. 2C:20-7a.

4

Petitioner was tried with co-indictee Williams, one of the robbers. The two other robbers, including Patrick, pleaded guilty.

Pretrial hearings were held on November 8 and 9, 1993, and Petitioner was tried by jury from November 10 to November 19, 1993. The jury returned its verdict on November 22, finding Petitioner guilty of three of the 14 charges: accomplice on both counts of armed robbery and accomplice to theft by receiving the stolen motor vehicle used to drive to and from the robbery. Petitioner was acquitted of the predicate offenses to the robbery. Further, at a post-trial hearing, the trial judge entered judgments of acquittal on the two theft charges pursuant to New Jersey Court Rule 3:18-2, due to an administrative error that omitted the theft charges from the jury's verdict sheet.

On March 18, 1994, the court sentenced Petitioner to an extended term as a repeat Graves Act offender. Petitioner was sentenced to an aggregate term of 55 years incarceration, with a 27 ½ period of parole ineligibility.

Petitioner appealed his conviction and sentence. In a per curiam decision, the Superior Court of New Jersey, Appellate Division ("Appellate Division") affirmed the conviction and sentence on November 18, 1996. Petitioner then petitioned for certification from the New Jersey Supreme Court, which was denied on September 22, 1997. On December 7, 1997, Petitioner filed a

pro se Petition for Post-Conviction Relief ("PCR") in the Law Division pursuant to New Jersey court rules. On September 18, 1998, the petition was denied. Petitioner appealed the denial of his PCR motion to the Appellate Division. Although neither party has provided this Court with the Appellate Division decision, Petitioner states in the instant petition that the denial of his PCR motion was affirmed on November 16, 2000. Petitioner's petition for certification to the New Jersey Supreme Court was denied in 2001. See State v. Staton, 168 N.J. 294 (2001).

Petitioner submitted this habeas petition on April 22, 2002. On May 17, 2002, after Petitioner was granted leave to proceed in forma pauperis and his petition was filed, the Court advised Petitioner of his rights under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). On July 25, 2002, this Court ordered Respondents to Answer the petition. Respondents filed a Motion to Dismiss for failure to comply with the statute of limitations on September 9, 2002. This Court granted the Motion to Dismiss. Petitioner appealed this Court's decision, and on January 12, 2004, the Court of Appeals for the Third Circuit vacated this Court's Order granting the Motion to Dismiss, and remanded the matter for further proceedings.

On August 27, 2004, this Court ordered Respondents to Answer the petition and provide the state court record. Respondents

6

filed an Answer on January 14, 2005, and the state court record

on April 8, 2005.

**PETITIONER'S CLAIMS**

Petitioner makes the following ten arguments for habeas

relief:

1. The trial court's instruction on accomplice liability
   was defective and denied Petitioner his right to a fair
   trial.
2. The omission from the verdict sheet of the thefts
   charged in the indictment deprived Petitioner of the
   opportunity to be convicted of lesser included
   offenses.
3. The jury's verdicts were irreconcilable.
4. The trial court committed plain error by permitting the
   Prosecutor to lead a witness and failed to give a
   curative instruction.
5. Ineffective assistance of trial counsel- failure to
   make objection to prejudicial comment.
6. [Same as #5, above].
7. Ineffective assistance of appellate counsel- failure to
   raise ineffective assistance of trial counsel on direct
   appeal.
8. Failure of PCR judge to grant an evidentiary hearing.
9. Ineffective assistance of PCR counsel.
10. [Same as #9, above].

See Petition for Writ of Habeas Corpus, ¶¶ 7-16.

It appears that Petitioner has raised the instant claims

before the New Jersey state courts.  Therefore, the claims are

properly before this Court for a decision on the merits.  See 28

U.S.C. § 2254(b)(1).  However, Petitioner's claims numbered 9 and

10, above, are not cognizable in this habeas petition and will be

denied, without discussion.  See 28 U.S.C. § 2254(i)("The

ineffectiveness or incompetence of counsel during Federal or

7

State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

## DISCUSSION

### A.   Standards Governing Petitioner's Claims.

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

8

> determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the
Supreme Court explained the application of § 2254(d)(1).  The
Court analyzed subsection 1 as two clauses:  the "contrary to"
clause and the "unreasonable application" clause.  The Court held
that under the "contrary to" clause, "a federal court may grant
the writ if the state court arrives at a conclusion opposite to
that reached by [the Supreme] Court on a question of law or if
the state court decides a case differently than [the Supreme]
Court has on a set of materially indistinguishable facts."  <u>Id.</u>
A federal court may grant the writ under the "unreasonable
application" clause, if "the state court identifies the correct
governing legal principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case."  <u>Id.</u> at 413.  Habeas relief may not be granted
under the "unreasonable application" clause unless a state
court's application of clearly established federal law was
objectively unreasonable; an incorrect application of federal law
alone is not sufficient to warrant habeas relief.  <u>See</u> <u>id.</u> at
411; <u>see also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000),

cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI
Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v.
Brennan, 528 U.S. 824 (1999).   Thus, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court
precedent.   See Werts, 228 F.3d at 197; see also Jacobs v. Horn,
395 F.3d 92, 100 (3d Cir. 2005).

        With regard to 28 U.S.C. § 2254(d)(2), a federal court must
confine its examination to evidence in the record.   See Abu-Jamal
v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001).
In addition, the state court record should be reviewed to assess
the reasonableness of the state court's factual determinations.
See id.   Finally, federal courts are required to apply a
"presumption of correctness to factual determinations made by the
state court."   Id.; see also 28 U.S.C. § 2254(e)(1).   The Court
of Appeals for the Third Circuit has ruled that this presumption
of correctness can be overcome only by clear and convincing
evidence.   See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.
2001)(citing 28 U.S.C. § 2254(e)(1)).   "A finding that is well-
supported and subject to the presumption of correctness is not
unreasonable."   Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan,
156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." <u>Sanna v. Dipaolo</u>, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A <u>pro se</u> habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

**B.   Petitioner's Claim Regarding Jury Charge (Claim 1, Petition ¶ 7).**

Petitioner argues that the trial court's instruction on accomplice liability was prejudicially defective and denied Petitioner a fair trial. He contends that the trial court's charge did not comply with New Jersey law because the court never explained within the accomplice charge the distinction between

11

being guilty of armed robbery and guilty of unarmed robbery;
thus, the instruction was as if both defendants were principals.
(Petition, ¶ 7).

However, the trial judge charged the jury with the
distinction between first degree and second degree robbery,
stating that: "robbery is a crime of the second degree except it
is a crime of the first degree if the robber is armed with or
uses or threatens the immediate use of a deadly weapon."
(Respondents' Exhibit "R" 2, at p. 21).  Further, with regard to
accomplice liability, the trial judge charged:

> Accomplice liability.  The state, ladies and
> gentlemen, also alleges that the defendants may have
> acted as accomplices in the commissions of the various
> crimes that are charged.  New Jersey law provides that
> a person is guilty of an offense if it is committed by
> his own conduct or by the conduct of another person for
> which he is legally accountable.
>
> This provision of the law means that not only is
> the person who actually commits the criminal act
> responsible for it, but one who is legally accountable
> for the acts of another is also responsible and
> punishable as if he committed the crime himself.  Who
> is an accomplice?  A person is an accomplice of another
> person in the commission of a crime or crimes when with
> purpose of promoting or facilitating the commission of
> the crime or crimes, he solicits such other person to
> commit it, and/or aids, agrees or attempts to aid such
> other person in planning or committing it.  Therefore,
> the state must prove beyond a reasonable doubt that a
> named defendant has committed the crime or crimes with
> which he is charged such as the [crimes charged in this
> case], and the state must prove that the defendant who
> is the alleged accomplice was legally accountable for
> the conduct of the principal, that is the defendant who
> you find actually committed the crime.

12

By definition, ladies and gentlemen, an accomplice must be a person who acts with the purpose of promoting or facilitating the commission of the substantive offense for which he is charged as an accomplice. For you to find a defendant guilty of a crime under a theory of accomplice liability, you must find that the defendant shared in the intent to commit the crime, and you must find that he, at least indirectly, participated in the commission of the criminal act.

Here, for one example, you must decide whether Mr. Staton possessed the same or different state of mind that is proven of the other defendants if you find that to be proven. The liability of Mr. Staton, if any, is entirely based upon his state of mind, and not on anyone else's. After carefully considering the evidence, you may conclude that Mr. Staton did or did not possess the same state of mind as the principal actors in the commission of the alleged robberies or aggravated assaults. You may reach the decision, after reviewing all of the evidence, that he did not possess the same state of mind to convict him for first degree robbery or second degree aggravated assault.

(R2, at pp. 45-47).[2]

The Appellate Division examined Petitioner's claim regarding the charge, and found that under New Jersey law, the charge was "neither erroneous nor clearly capable of producing an unjust result." (R13 at p. 11). Citing New Jersey law, the Appellate Division discussed the charge and noted:

Having properly instructed the jury regarding the elements of the crimes charged, providing the jury with an outline of those crimes, and explaining to the jury that they may convict Staton of a lesser offense based upon his state of mind, the judge's failure to specifically re-explain the elements of first and

_____

[2]   The trial judge continued with the accomplice liability charge, resulting in approximately three additional pages of transcript, located at R2, pp. 47-50).

13

second degree robbery in the context of accomplice
liability was not erroneous.

(R13 at p. 12).

Challenges to jury instructions solely as in error under
state law do not state a claim cognizable in federal habeas
corpus proceedings. See Engle v. Isaac, 456 U.S. 107 (1982);
Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert.
denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408,
412 (D.N.J. 1987)(Thompson, J.)("Questions concerning
instructions are normally matters of state law and are not
cognizable in federal habeas corpus review."). The finding by
the state appeals court should be "the end of the matter of
possible error based on the measuring of the evidence against the
state law because state, not federal, courts decide these
things." Morgan v. Krenke, 232 F.3d 562, 567 (7th Cir. 2000),
cert. denied, 532 U.S. 951 (2001).

Federal courts will evaluate jury instructions in the
context of the overall charge to the jury as a component of the
entire trial process. See Estelle v. McGuire, 502 U.S. 62
(1991); Cupp v. Naughten, 414 U.S. 141, 146 (1973); Henderson v.
Kibbe, 431 U.S. 145, 154 (1977); United States ex rel. Harding v.
Marks, 541 F.2d 402, 405 (3d Cir. 1976). The court will then
determine whether the ailing instructions so infected the entire
trial so that the resulting conviction violated due process
rendering the trial fundamentally unfair. See Estelle, 502 U.S.

14

at 71. Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (1997); see also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis. See Smith, 120 F.3d at 416-17; see also Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)). In evaluating a challenged instruction:

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, ___, 124 S. Ct. 1830, 1832 (2004) (internal quotations and citations omitted).

In the instant case, the Court finds that the jury instructions did not result in a fundamentally unfair trial or a violation of Petitioner's due process rights. Evidence at trial consisted of various witnesses' testimony, the credibility of which was to be weighed by the jury. There is no indication that the jury misapplied the challenged instruction; rather, the jury made a credibility determination to believe the state witness' testimony over Petitioner's defenses, and to find Petitioner guilty. Further, as explained by the Appellate Division, the trial judge's charges were adequate and proper. However, even if the charge was improper, which neither the state courts nor this Court finds, any error would be considered harmless in that it did not have a substantial effect on the verdict.

Thus, Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

**C.   Claim Regarding Verdict Sheet (Claim 2, Petition ¶ 8) and
       Claim Regarding Verdicts Being Irreconcilable (Claim 3,
       Petition ¶ 9).**

Petitioner argues that an administrative error resulting in
two of the 14 counts against him being omitted from the verdict
sheet deprived him of an opportunity to be convicted of lesser
included offenses.  The omission of the two theft counts from the
verdict sheet, according to Petitioner, was particularly
prejudicial in that he was acquitted on every predicate related
offense, but convicted of two armed robberies.  Petitioner argues
that the acquittals on the weapons and assault charges "counts
loudly and clearly expressed the jury's determination that
petitioner was not a full participant in the armed robberies."
Petitioner states that the jury may have convicted him on the
thefts instead, had the theft counts been included on the verdict
sheet.  (Petition, ¶ 8).

Further, Petitioner argues that the verdicts acquitting him
of the weapons and assault charges are irreconcilable with the
verdicts convicting him as an accomplice to armed robbery with
the same weapons.  (Petition, ¶ 9).

In a post-trial hearing conducted on January 31, 1994, the
trial court heard arguments on Petitioner's motion to set aside
the verdict and motion for a directed verdict, according to New
Jersey Court Rules 3:18-2 (motion after discharge of jury), 3:19-

17

1 (several defendants or counts and written verdict sheets) and
3:20-1 (new trial).   (R7)

The trial judge denied Petitioner's motions.   The judge
found that while the verdicts "don't make sense," they were not
illegal.   The judge noted the evidence presented to the jury and
concluded that although the verdicts may have been inconsistent,
"consistency in verdicts is not required" under New Jersey law.
The trial judge found "after reviewing the evidence that there
was evidence, and considerable evidence, whereby this jury in an
application of rational deliberations could find the Defendant
guilty of the robberies as an accomplice, and as a participant,
and as such, as being the driver of the car.   They had plenty of
evidence to that effect."   (R7 at pp. 25-28).   The trial judge
denied the motions stating:

> Essentially, what it comes down to, unless the
> inconsistent verdicts preclude the establishment of the
> element of an offense as it was seen in two cases that
> were cited and reviewed, they do not effect the
> validity of a conviction that is supported by [a]
> sufficient quantum of evidence.   I find that that is
> the case her[e], that there was a sufficient quantum of
> evidence, and as such, the Court will deny the
> application to overturn the verdicts under an
> application for judgment NOV under 3:18-2.

(R7 at p. 30, citing State v. Hawkins, 178 N.J. Super. 321 (App.
Div. 1981); United States v. Hannah, 584 F.2d 227 (3d Cir. 1978),
overruled by United States v. Powell, 469 U.S. 57 (1984)).   The
trial judge continued to hold that with regard to the error on
the verdict sheets, under New Jersey law, a court should not set

18

aside the verdict unless there is a manifest denial of justice demonstrated clear and convincingly. (R7 at p. 32). The trial judge found that based on the evidence presented to the jury, there was no manifest denial of justice in the jury's verdicts. (R7 at p. 32).

The Appellate Division also discussed Petitioner's claims regarding the verdicts and verdict sheet error at length. (R13 at pp. 13-20). The Appellate Division, citing United States Supreme Court law, found that: "Consistency in jury verdicts in criminal cases is not required under either the United States or New Jersey Constitution." (R13 at p. 14, citing <u>United States v. Powell</u>, 469 U.S. 57, 62-66 (1984); <u>Dunn v. United States</u>, 284 U.S. 390, 393-94 (1932)). Further, the Appellate Division noted that acquittal of possession of a weapon does not necessarily preclude a conviction for armed robbery, if the State proves that an accomplice had the purpose to promote or facilitate the robbery with the use of a firearm used by the principal. (R13 at pp. 14-15). The Appellate Division further analyzed New Jersey law to determine that the verdicts were not irreconcilable, and also found that there was sufficient evidence to support the jury's conclusion that Petitioner's intent as an accomplice was to aid in the commission of the robbery, but not in the assault or unlawful possession of a weapon. (R13 at pp. 15-16).

19

As discussed by the Appellate Division, the United States Supreme Court has long held that "[c]onsistency in the verdict is not necessary." Dunn, 284 U.S. at 393; Powell, 469 U.S. at 62. The Court of Appeals for the Third Circuit likewise has ruled that "[w]here different offenses are charged in separate counts of a single indictment, an acquittal on one or more of the counts does not invalidate a verdict of guilty on another even where the same evidence is offered in support of each count." United States v. Vastine, 363 F.2d 853, 854 (3d Cir. 1966)(*citing* Dunn, 284 U.S. at 390). Dunn explains that:

> The verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

Dunn, 284 U.S. at 393. See also Powell, 469 U.S. at 65 ("[i]nconsistent verdicts – even verdicts that acquit on a predicate offense while convicting on the compound offense – should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense").

20

In this case, the state courts applied the correct federal law to Petitioner's case, and found no constitutional violation. Thus, Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

With regard to the verdict sheet error, the Appellate Division found that the error did not constitute plain error or produce an unjust result. The Appellate Division found that the jury "clearly found Staton was an accomplice to the robbery. Omission of the theft counts from the verdict sheet here did not affect the jury's verdict." (R13 at p. 20).

This Court finds no reason to upset the state court's decision with regard to the verdict sheet, and finds that there was no due process violation in the jury's verdicts against Petitioner. The Court notes that the jury was charged on the theft counts, and that omission of the theft counts from the verdict sheet did not render the jury's verdict to convict on the robbery charges erroneous. Again, Petitioner has not demonstrated that the actions of the state courts "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

**D.   Trial Court Error (Claim 4, Petition ¶ 10).**

Petitioner claims that the trial court committed plain error in allowing the prosecutor to lead a witness and elicit testimony that Petitioner had just come home from prison, and by failing to give a curative instruction as to this "highly prejudicial comment." (Petition, ¶ 10).

According to the record, during Patrick's testimony for the State, the prosecutor asked him why he thought that the car allegedly driven by Petitioner was stolen.  Patrick responded:

> Well, I thought about it, I thought it was theirs at first, but then as we was riding, I thought about it and I figured they wouldn't have a car, and I just assumed it was stolen.  There's no keys in it.

(R19, Exhibit labeled Da 62/Da 100).  The prosecutor then asked the witness to repeat what he had said, and according to Petitioner led the witness into making the following prejudicial statement:

> Q:  I believe the question was how did you know the car was stolen?
> A:  I wasn't sure whether the car was stolen at first or not.  But then, after I sat down and I thought about

> it, I figured wouldn't any of them would own a car like
> this, so I just assumed it was stolen.
> Q:   Why wouldn't any of them own a car like that?
> A:   <u>Because they just recently come home</u>.

(R19, Exhibit labeled Da63/Da101 (emphasis added)).  Defense
counsel did not object to the statement, and the trial court did
not offer a curative instruction.

The PCR judge reviewed this statement in the context of
Petitioner's ineffective assistance of counsel claim, and found
that the statement was, "at best, ambiguous."  (R18).

With respect to Petitioner's claims in his habeas petition
that the trial court erred in admitting the above-described
testimony, it has been held that federal courts must afford the
states deference in their determinations regarding evidence and
procedure.  See <u>Crane v. Kentucky</u>, 476 U.S. 683, 690
(1986)(stating "we have never questioned the power of the States
to exclude evidence through the application of evidentiary rules
that themselves serve the interests of fairness and reliability,
even if the defendant would prefer to see that evidence
admitted").  It is well-established that "a state court's
misapplication of its own law does not generally raise a
constitutional claim.  The federal courts have no supervisory
authority over state judicial proceedings and may intervene only
to correct wrongs of constitutional dimension." <u>Smith v. Horn</u>,
120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), <u>cert.
denied</u>, 522 U.S. 1109 (1998).

Assuming, arguendo, that the trial judge did err under state law in allowing the testimony, a state's misapplication of its own law may constitute a violation of due process only in "rare" cases. See id. ("when that misapplication has the effect of depriving a person of life, liberty, or property without due process of law in violation of the Fourteenth Amendment, the resulting federal constitutional error can be corrected by a federal habeas court"). Evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir.), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted). The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the

reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). An error is not harmless if "it aborts the basic trial process or denies it altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

In the instant case, this Court finds that Petitioner's case is not the "rare" instance where evidentiary rulings have violated his rights to due process. To begin, no objection was made to the statement challenged by Petitioner. A review of the whole record demonstrates that the trial process was fundamentally fair. Further, Petitioner testified in his own defense, and the fact of his past criminality was subject to exposure anyway.

Thus, the Court finds that the testimony presented at trial and considered by the jury, including the testimony of Patrick, one of the robbers, and the Trenton police officers, was sufficient to render Petitioner's conviction a valid conviction, and that he was not deprived of due process due to the admission of the this testimony.

Further, the state court determinations have not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

**E. Ineffective Assistance of Counsel (Claims 5, 6, 7; Petition ¶¶ 11, 12, 13).**

Petitioner claims that trial counsel was ineffective for failing to object to the testimony elicited by the prosecutor regarding the fact that he had "just come home." He states that it was "obvious" that defense counsel was "not paying attention when the highly prejudicial comment was made, because he made no objection." (Petition, ¶¶ 11, 12). Petitioner also claims that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim on direct appeal. (Petition, ¶ 13).

In Strickland v. Washington, the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," and "that the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984).

Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. "In any case presenting an ineffectiveness claim, the

26

performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. In order to establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Fritz, 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at 694). The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

This issue was raised in Petitioner's PCR application. Describing and applying the Strickland two-prong test, the PCR judge found that:

> The trial counsel obviously made a decision not to draw the jury's attention to a statement that was, at best,

27

ambiguous.  Even if the trial counsel acted with
professional incompetence by not objecting, nothing in
the record suggests that but for the attorney's
failure, the result of petitioner's trial would have
been different.  There was substantial evidence that
led a jury to determine petitioner's guilt.

(R18).

This Court likewise finds that errors alleged by Petitioner
did not render counsel's performance "deficient" so as to deny
Petitioner the benefit of counsel.  Moreover, Petitioner has not
demonstrated that the result of his trial would have been
different, had counsel objected to this comment.  A review of the
limited record provided indicates that defense counsel advocated
strongly for Petitioner.  Moreover, Petitioner has not overcome
the strong presumption that defense counsel's decision to not
object to this comment was due to trial strategy, i.e., it is
conceivable that counsel did not want to highlight the testimony,
which, this Court agrees was ambiguous, before the jury.

Additionally, the Court finds that the state courts applied
the correct federal law, i.e., Strickland, to evaluate the
claims, and that Petitioner has not demonstrated that the actions
of the state courts "resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States," or "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." Accordingly, these grounds for a writ of habeas corpus will be denied.[3]

**F.   Claim of Denial of Evidentiary Hearing on PCR (Claim 8, Petition ¶ 14).**

Petitioner argues that the PCR judge erred in not granting an evidentiary hearing with regard to his PCR claims. (Petition, ¶ 14). The PCR judge found that no hearing was required as Petitioner did not meet his burden of establishing a prima facie case of ineffective assistance of counsel. (R18).

It has long been established that habeas corpus relief is intended only to address claims attacking underlying state convictions, not matters collateral to those convictions. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998), cert. denied, 526 U.S. 1065 (1999). In Hassine, the Court of Appeals for the Third Circuit held that "[t]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." Id.; see also Lambert v. Blackwell, 2003 WL

---

[3]  Petitioner claims in paragraph 13 of his petition that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim on direct appeal. However, this ground for habeas relief will be denied. This Court agrees with the PCR judge that under New Jersey law, these claims are usually reserved for PCR motions, not direct appeal, and finds no misapplication of federal law to warrant habeas relief.

1718511 at *35 (E.D. Pa. Apr. 1, 2003)("Lambert's claims of errors by the [post-conviction relief] court fail to assert viable federal habeas claims," citing Hassine, 160 F.3d at 954); Rollins v. Snyder, 2002 WL 226618 at *5 (D. Del. Feb. 13, 2002)("Rollins' claims based on the Delaware courts' actions in his [postconviction proceedings] are not cognizable on federal habeas review").

Nonetheless, this Court agrees with the PCR judge that Petitioner did not make a showing of ineffective assistance of counsel to warrant an evidentiary hearing under New Jersey law. Petitioner will be denied habeas relief on this ground.

### CONCLUSION

For the foregoing reasons, Petitioner's application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is denied.

The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

GARRETT E. BROWN, JR.
United States District Judge

Dated: April 28, 2005

30